

# COURT OF APPEALS

## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00071-CR

JOHN WALTER RAYBON                                                      APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

### FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

----------

## MEMORANDUM OPINION[1]

----------

In three issues, appellant John Walter Raybon contends that the evidence presented at his trial is insufficient to support his two convictions for retaliation.[2] We affirm.

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. § 36.06(a) (West 2011).

**Background Facts**

Kevin Taylor, a manager with AT&T, was working at a store in Wichita Falls on January 8, 2011, a Saturday, when appellant entered the store to seek assistance with issues related to his account. Appellant brought his laptop into the store. Taylor used the laptop to help appellant, but the laptop eventually fell off of a counter, hit the floor, and sustained damage. Taylor said that he would contact appellant two days later, on Monday, about helping appellant repair his laptop.

Eventually, Taylor told appellant to get a price for repairing the laptop from an electronics store, and Taylor said that AT&T would pay for the repair.[3] Nonetheless, appellant contacted Taylor on numerous occasions about the laptop, becoming abrasive toward him. For example, on January 11, the Tuesday after the laptop fell, appellant mentioned to Taylor that he "carried a gun with him anywhere he went." Appellant also told Taylor that he would get fired, that a "shit storm [was] coming," and that Taylor "was about to start receiving a lot of unwanted visitors." Officials at Taylor's store advised him to begin taking varied routes home from work. AT&T assigned security officers to work in the store beginning January 12.

On January 13, during a phone conversation that appellant had about the damage to his laptop with Brandon Haines, who was providing customer care

---

[3]At some point, appellant received a payment of $625 from AT&T's insurance company for the damage to his laptop.

support for AT&T, appellant became angry and told Haines that he would "take care of the situation himself" by getting "his nine" and going to the store. Haines believed that by referencing his "nine," appellant meant his gun. Haines told appellant that he took appellant's threat seriously, ended the conversation, and contacted Taylor to inform him about the threat.

Shortly after appellant's conversation with Haines ended, Lane Akin, who works with AT&T as an asset protection analyst, received information about what appellant had conveyed to Haines, notified the Wichita Falls Police Department about that information, and traveled to Wichita Falls to meet with Taylor.[4] On the night of January 24, after speaking with Taylor, Akin called appellant, told him that his "threats . . . were starting to frighten the employees," and asked him to make no further contact with Taylor but to instead contact only Akin with any questions about issues related to the laptop. Akin advised appellant that Akin had contacted the Wichita Falls police, and Akin told appellant that if he continued to contact Taylor, harassment charges would be filed against him. In the conversation, appellant referenced litigation, lawyers, and the media.

On January 28, appellant returned to the store. Outside of the store, in the presence of Wichita Falls Police Department Officer John Ricketts, who was providing security, Taylor barred appellant from the premises. In response,

---

[4]Akin is a retired Texas Ranger. He spent thirty years in law enforcement before working for AT&T.

appellant became agitated, made statements about Taylor losing his job, took a picture of Taylor, and said to Taylor, "[Y]ou're going to regret this."

After Taylor went into the store, as Officer Ricketts was trying to get information from appellant so that appellant could be legally barred from the store, appellant repeatedly placed his hands in his pockets even though Officer Ricketts had told him not to. Officer Ricketts told appellant to turn around and to place his hands on his head so that Officer Ricketts could pat him down for weapons. Appellant eventually did so, and Officer Ricketts found a nine-millimeter semiautomatic gun in appellant's left jacket pocket. The gun had several rounds in its magazine. Officer Ricketts arrested appellant for unlawful carrying of a weapon.

On the way to jail, appellant expressed that it was Taylor's fault that he had been arrested. In jail, appellant told Officer Ricketts that he carried a gun at all times, that he would use it, that "AT&T and Taylor had not heard the last of him," and that he would get his money one way or another. Taylor called Akin to inform him about what had occurred that day.

Upon Akin's direction, AT&T terminated its account with appellant. On January 31, after appellant called AT&T's customer service department to seek reactivation of his service, a customer service employee transferred the call to Akin. During appellant's conversation with Akin, which lasted longer than twenty minutes, appellant talked "about being upset over certain issues." He also mentioned that he had been in jail, that his gun had been taken from him, that he

4

was licensed to carry a gun in twenty-six states, that he was going to get the gun back, and that he was "going to make a move to destroy [Akin's] life and . . . Taylor's life." According to Akin, appellant's statement about getting his gun back was made in "real close time proximity" to his statement about destroying Akin's and Taylor's lives. Akin understood appellant's statement as a definite threat of violence toward him and Taylor; Akin testified at trial that he believed that there was a "definite possibility" that appellant meant that he would kill them and destroy their lives once he got his gun back. After the conversation ended, Akin reported appellant's statement about destroying his and Taylor's lives to the police.

A grand jury indicted appellant with two counts of retaliation. The indictments alleged that appellant had intentionally or knowingly threatened to harm Akin and Taylor by shooting and killing them "in retaliation for or on account of the[ir] service or status . . . as . . . prospective witness[es], informant[s], and as . . . person[s] who had reported the occurrence of a crime."

Appellant pled not guilty to both counts, and the parties litigated the counts through one trial. After considering the evidence and the parties' arguments, a jury convicted appellant of both counts. The jury then listened to evidence and arguments concerning appellant's punishment and assessed ten years' confinement on each count. Appellant brought this appeal.

5

## Evidentiary Sufficiency

In his three issues, appellant argues that, respectively, the State failed to prove that any threats he made accompanied a retaliatory intent, the State failed to prove that he threatened harm by an unlawful act, and the State failed to prove that he threatened to shoot or kill Akin or Taylor. In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Wise*, 364 S.W.3d at 903. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the

6

light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011).

We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Wise*, 364 S.W.3d at 903. In determining the sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and must defer to that resolution." *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

To obtain appellant's third-degree-felony convictions for retaliation under section 36.06 of the penal code as the offenses were charged in the indictment, the State was required to prove that he intentionally or knowingly threatened to harm Akin and Taylor by an unlawful act—here, shooting and killing them—"in retaliation for or on account of the[ir] service or status" as "prospective witness[es], . . . informant[s]," or "person[s] who . . . reported . . . the occurrence of a crime." Tex. Penal Code Ann. § 36.06(a)(1), (c).

**Retaliatory intent**

In his first issue, appellant contends that the evidence is insufficient to prove that he threatened Akin and Taylor "in retaliation for or on account of" their service as prospective witnesses, informants, or reporters of the occurrence of a crime. *See id.* § 36.06(a)(1). Appellant intentionally retaliated if it was his

7

conscious objective to do so. *See* Tex. Penal Code Ann. § 6.03(a) (West 2011). A defendant's intent to retaliate may be inferred from circumstantial evidence, such as the defendant's acts, words, or conduct. *See Lozano v. State*, 359 S.W.3d 790, 814 (Tex. App.—Fort Worth 2012, pet. ref'd); *Helleson v. State*, 5 S.W.3d 393, 395 (Tex. App.—Fort Worth 1999, pet. ref'd).

One of the purposes of the retaliation statute is to encourage a "certain class of citizens to perform vital public duties without fear of retribution." *Doyle v. State*, 661 S.W.2d 726, 729 (Tex. Crim. App. 1983); *see Cada v. State*, 334 S.W.3d 766, 771 (Tex. Crim. App. 2011); *Morrow v. State*, 862 S.W.2d 612, 615 (Tex. Crim. App. 1993). Section 36.06, however, does not require the threatened retaliatory harm be imminent, nor does it require the actor to intend to carry out the threat. *In re B.P.H.*, 83 S.W.3d 400, 407 (Tex. App.—Fort Worth 2002, no pet.); *see Lebleu v. State*, 192 S.W.3d 205, 211 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd) ("The crime of retaliation does not require an intent to follow through with a threat. . . . So long as a person issues a threat, knowingly and intentionally, and for the reasons set out in the statute, then she is guilty of the crime."). Also, the "fact that the party threatened was not present when the threat was made is no defense." *Doyle*, 661 S.W.2d at 728.

It was not sufficient for the State to prove merely that appellant threatened Akin and Taylor after learning that previous statements had been reported to the police; rather, the law required the State to prove that the threat occurred because of appellant's knowledge of the reports. *See Riley v. State*, 965 S.W.2d

8

1, 2 (Tex. App.—Houston [1st Dist.] 1997, pet. ref'd); *Wilson v. State*, No. 09-96-00086-CR, 1997 WL 137420, at *3 (Tex. App.—Beaumont Mar. 26, 1997, pet. ref'd) (not designated for publication); *see also Helleson*, 5 S.W.3d at 395 ("To support a conviction for the offense of retaliation, the evidence must establish the retributory element found in section 36.06(a)(1) . . . ."). Comments supporting retaliation may be evaluated in the "context within which they are uttered." *Meyer v. State*, 366 S.W.3d 728, 731 (Tex. App.—Texarkana 2012, no pet.).

Appellant contends that even if his overall statements are interpreted in the "most damning light, the statements constitute ambiguous threats with no relationship to any action Taylor or Akin may have made or might have made." He also asserts that neither the "content nor timing of the remarks . . . support a conclusion that the statements were made *because* anyone reported him, might report him, inform on him, or testify against him." Finally, he argues that since his threats occurred "both before and after [he] was told that [Akin and Taylor] had reported his behavior to law enforcement," no rational inference can be made that the threats made after he learned of the report to law enforcement were retaliatory.

In its brief, the State contends that the jury was entitled to infer appellant's retributive intent in making the statement that he was going to destroy Akin's and Taylor's lives because (1) he had been told by Akin on January 24 that harassment charges could be filed against him and that the police had already been contacted; (2) when Taylor barred him from AT&T's store on January 28 in

9

the presence of Officer Ricketts, appellant said that Taylor was "going to regret [it]"; (3) appellant made the statement about destroying Taylor's and Akin's lives on January 31, which was three days after he was barred from AT&T's store and was arrested for unlawfully carrying a weapon; and (4) appellant made the January 31 statement in close proximity to talking about being in jail and having his gun taken away while he was there.

Our resolution of appellant's first issue hinges upon whether the jury permissibly drew a reasonable inference of appellant's intent to retaliate, which would be entitled to our deference, or impermissibly speculated about appellant's intent by "theorizing or guessing about the possible meaning of [the] facts and evidence presented." *See Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007)). We conclude that the evidence entitled the jury to draw a reasonable inference about appellant's retaliatory intent.

Although the evidence establishes that appellant was verbally abrasive and threatening toward several people, including Taylor, before learning of Taylor's and Akin's contacts with the police, other evidence implies that appellant's threats after learning of the contacts were based, at least in part, on the contacts rather than solely on the damage to his laptop and on his dispute with AT&T. For example, soon after Taylor, in front of a police officer, barred appellant from the store on January 28, 2011 (which was after appellant had been paid for the damage to his laptop and after he had learned about Akin's

10

contact with the police),[5] appellant told Taylor that he was going to "regret" doing so. Then, while appellant was nearby the store after Taylor had entered it, appellant began placing his hands into his pockets and reaching for a gun that had several rounds in its magazine.[6] Shortly after appellant's arrest for unlawful carrying of a weapon, on the way to jail, he mentioned Taylor's name and said that it was Taylor's fault that he had been arrested. While confined in jail, appellant spoke about being angry with Taylor, stated that he "carrie[d] a gun on him at all times and [would] use it," and said that Taylor had not "heard the last of" him.

The events on January 24 (when Akin first spoke to appellant and told him about contacting the police) and January 28 provide context for Akin's conversation with appellant on January 31. During that conversation, appellant said to Akin that he had been in jail, that the police had taken his gun, and that he was going to get the gun back and "make a move to destroy" Akin's and Taylor's lives.

---

[5]We agree with the State that Taylor's barring appellant from the store made Taylor an "informant" who was protected from a retaliatory threat by section 36.06 of the penal code. *See* Tex. Penal Code Ann. § 36.06(b)(2) (defining "[i]nformant" as a "person who has communicated information to the government in connection with any governmental function").

[6]Officer Ricketts testified that appellant did not "get to" the gun because Officer Ricketts prevented appellant from doing so. Appellant struggled with Officer Ricketts and was not fully subdued until another officer arrived.

11

We conclude that these facts provided the jury with enough circumstantial evidence to form a reasonable inference of appellant's retaliatory intent when he threatened to destroy Taylor's and Akin's lives. *See Lozano*, 359 S.W.3d at 814; *Helleson*, 5 S.W.3d at 395. Although appellant spoke with several people about the damage to his laptop and about his issues with AT&T during January 2011, his threat on January 31 to "destroy" lives was aimed at the only two people— Taylor and Akin—who had interacted with the police about appellant's threats. Appellant learned about Akin's contact with the police only seven days before threatening to destroy Akin's life, and appellant witnessed Taylor's contact with the police only three days before threatening to destroy Taylor's life. And in the same conversation in which appellant threatened to destroy Akin's and Taylor's lives, he mentioned that he had been in jail and that the police had taken his gun. Although some evidence in the record, including the threats that appellant made before January 24, may raise a conflicting inference that appellant's threat against Akin and Taylor on January 31 was based on his general displeasure with them and with AT&T rather than on their contacts with the police, the jury was entitled to choose between two reasonable inferences, and we must defer to that choice. *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013); *Sorrells*, 343 S.W.3d at 155; *Matson*, 819 S.W.2d at 846.

Finally, citing the Amarillo Court of Appeals's decision in *Wilkins v. State*, appellant contends that to obtain a conviction for retaliation, the State was required to prove that appellant made a threat with the intent to "influence the

12

person in their capacity as a member of the statutorily protected class." 279 S.W.3d 701, 704 (Tex. App.—Amarillo 2007, no pet.). The specific intent to inhibit or influence the types of public service included in the retaliation statute—as distinguished from the intent to harm or threaten harm in retaliation for or on account of public service—is not an element of retaliation under the plain language of section 36.06(a)(1), and we join the Corpus Christi Court of Appeals in rejecting the holding in *Wilkins* on that basis. *See* Tex. Penal Code Ann. § 36.06(a)(1);[7] *Lindsey v. State*, No. 13-09-00181-CR, 2011 WL 2739454, at *5 n.4 (Tex. App.—Corpus Christi July 14, 2011, no pet.) (mem. op. on remand, not designated for publication); *see also Arceneaux v. State*, No. 09-08-00210-CR, 2009 WL 857624, at *1 (Tex. App.—Beaumont Apr. 1, 2009, no pet.) (mem. op., not designated for publication) ("We do not accept Arceneaux's argument that section 36.06(a)(1)(A) of the Penal Code . . . requires the threat to have affected or inhibited the service rendered by the public servant.").

For all of these reasons, viewing the evidence in the light most favorable to the jury's verdict, we conclude that the evidence was sufficient for a rational jury to infer appellant's retaliatory intent beyond a reasonable doubt, and we overrule appellant's first issue.

---

[7]In contrast, section 36.06(a)(2) supports a conviction for obstruction or retaliation when a person seeks to "prevent or delay the service of another" as a public servant, witness, prospective witness, informant, or reporter of crime. Tex. Penal Code Ann. § 36.06(a)(2). The indictment in this case tracked section 36.06(a)(1).

**Unlawful act to shoot or kill**

In his second and third issues, appellant argues that the evidence is insufficient to prove that he threatened an unlawful act, which, under the indictment in this case, was shooting and killing Taylor and Akin. *See* Tex. Penal Code Ann. § 36.06(a). "Whether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault." *Manemann v. State*, 878 S.W.2d 334, 337 (Tex. App.—Austin 1994, pet. ref'd); *see Meyer*, 366 S.W.3d at 731.

> Concerning his conversation with appellant on January 31, Akin testified,
>
> [T]he call again began with about 20 minutes or so of . . . him ranting . . . and talking about being upset over certain issues . . . and I just listened to him. . . . [H]e mentioned the fact that . . . he had been in jail and that Wichita Falls PD had taken his weapon.
>
> He was upset about his service being cancelled. He said he was going to get his weapons back. Yeah, I remember he told me that -- that he was *licensed to carry in 26 states and that he was going to make a move to destroy*[8] *my life and Kevin Taylor's life.* [Emphasis added.]

Akin then testified that he took appellant's statement as a threat to himself and Taylor, that he thought that it was a "definite possibility" that appellant meant that he would shoot or kill Akin and Taylor, and that appellant's reference to his

---

[8]According to Webster's Third New International Dictionary, "destroy" may mean to take the life of or to kill. Webster's Third New Int'l Dictionary 615 (2002).

14

weapon was made in "real close time proximity" and "right on the [heels]" to his statement about destroying Akin's and Taylor's lives.

Viewed in the light most favorable to the verdict, we conclude that this testimony entitled the jury to rationally find beyond a reasonable doubt that appellant threatened an unlawful act by shooting and killing Taylor and Akin. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Wise*, 364 S.W.3d at 903. While appellant argues that "make a move to destroy" could have "as easily" referred to his intent to sue Taylor and Akin, we must defer to the jury's reasonable inference that the comment, in its context of appellant stating in close proximity that he was going to retrieve his gun, stating before January 31 that he was going to bring his "nine" to the store, and actually bringing his gun—a nine millimeter—to the store and reaching for it three days earlier, instead referred to shooting and killing Taylor and Akin. *See Sorrells*, 343 S.W.3d at 155; *Matson*, 819 S.W.2d at 846; *see also Meyer*, 366 S.W.3d at 731–32 (stating that comments can be evaluated as threats based on their context and holding that because the evidence supported differing reasonable conclusions that could be drawn by a factfinder, the evidence was sufficient to show a threat to harm); *Manemann*, 878 S.W.2d at 337 ("Threats of physical harm need not be directly expressed, but may be contained in veiled statements nonetheless implying injury to the recipient when viewed in all the circumstances."). We overrule appellant's second and third issues.

## Conclusion

Having overruled all of appellant's issues, we affirm the trial court's judgment.

PER CURIAM

PANEL:  LIVINGSTON, C.J.; MCCOY and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 15, 2013

16