Averette **MANEMANN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 3–93–245–CR.

Court of Appeals of Texas, Austin.

June 15, 1994.

Discretionary Review Refused Sept. 21, 1994.

Francis W. Williams, Austin, for appellant.

Ken Oden, County Atty., Giselle Horton, Asst. County Atty., Austin, for appellee.

Before ABOUSSIE, JONES and DALLY\*, JJ.

DALLY, Justice (Retired).

Appellant was convicted of the offense of telephone harassment on his plea of not guilty entered before the court. In his appeal, appellant asserts the evidence is insufficient to sustain the conviction because he was not identified as the caller making the threat, and because the caller did not threaten to inflict serious bodily injury on the recipient of the call. We will affirm the judgment.

■ Act of May 26, 1983, 68th Leg., R.S., ch. 411, § 1, 1983 Tex.Gen. Laws 2204, 2205 (Tex. Penal Code Ann. § 42.07(a)(2) (since amended)).

As it read at the time of this offense, Section 42.07(a)(2) provided:

> A person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, he:
>
> (2) threatens, by telephone ... in a manner reasonably likely to alarm the person receiving the threat, to inflict serious bodily injury on the person or to commit a felony against the person....

*Id.* "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or

---

\* Before Carl E.F. Dally, Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1988).

organ. Tex. Penal Code Ann. § 1.07(a)(34) (West 1974).

It was alleged in this cause that:

Averette Manemann, the Defendant, on or about the 24th day of February, A.D. 1993, with the intent to harass, annoy, alarm, abuse, torment or embarrass H. Maldonado, did then and there threaten H. Maldonado by telephone, in a manner reasonably likely to alarm H. Maldonado, to inflict bodily injury on H. Maldonado.

The information fails to allege *serious* bodily injury. However, since there was no objection to the pleading, the State's failure to allege *serious* bodily injury was waived. Tex.Code Crim.Proc.Ann. art. 1.14(b) (West Supp.1994); *Studer v. State,* 799 S.W.2d 263, 273 (Tex.Crim.App.1990); *Rodriguez v. State,* 799 S.W.2d 301 (Tex.Crim.App.1990); *Ex parte Morris,* 800 S.W.2d 225, 227 (Tex. Crim.App.1990). Section 42.07(a)(2) was amended by the legislature, to delete the word "serious" a few days after the alleged day of the commission of this offense. Nevertheless, to sustain the conviction, the evidence must show beyond a reasonable doubt that the threat made was to inflict *serious* bodily injury to the recipient or to commit a felony against the recipient.

Hugo Maldonado, Jr., was a City of Austin police officer on the hospital detail at Brackenridge Hospital on February 16, 1993. While Officer Maldonado was on duty, appellant was brought to the emergency room with a deep laceration over his eye. Appellant was "fighting with the medical staff wanting to leave" without treatment. Appellant's girl friend, Lisa Parks, was in the emergency room with him. Parks told Maldonado that appellant's wound was self-inflicted. Maldonado placed appellant under arrest on a police officer emergency commitment, because Maldonado thought appellant was a danger to himself; his breath had an alcoholic smell, his face was covered with blood, and he was acting irrationally, cussing, and refusing medical attention. After appellant had received treatment for his wound and had been evaluated by a mental health deputy, he was released. Officer Maldonado testified appellant was at the hospital about "two and a half hours."

On February 23, there was a Guns 'N Roses concert at the Special Events Center, which is near the Brackenridge Hospital complex. Maldonado, while on duty at the complex, heard "an officer needs assistance" call on his radio. Maldonado and Officer Schultz went to the Special Events Center to back up Austin police officers and Alcoholic Beverage Commission officers. When Maldonado got to the Special Events Center, he saw and recognized appellant and his girl friend, Lisa Parks. Maldonado told the other officers about the incident concerning appellant which had occurred a week earlier, and Maldonado told the other officers they should use caution in handling appellant. Appellant, whom the officers had up against a wall, turned around and said to Maldonado, "Hey, mother fucker. I know you, Maldonado." Maldonado went over to talk to Lisa Parks and appellant began yelling, "Hey, mother fucker. Don't you talk to her, you son-of-a-bitch. Leave her alone." Maldonado ended his conversation with Parks. Another officer took appellant into custody for disorderly conduct and public intoxication. Appellant was released from custody about 3:00 a.m., February 24th.

Later that day, February 24th, Maldonado was on duty at Brackenridge Hospital with Austin police officer Larry Horn. Horn answered a phone call which was for Maldonado. Horn told Maldonado the extension to use to receive his call. Maldonado picked up the phone and said "Officer Maldonado. Can I help you." The voice on the phone began, "Hey, mother fucker. Do you know who this is?" Maldonado testified he recognized the voice as that of appellant. Maldonado said "Yes, I know who you are, Averette Manemann." Appellant then said, "Do you really know who this is Bitch? That's right Bitch. And I know where you work and I'm going to get your ass, mother fucker. So just wait, Bitch. I'm going to get you, Bitch." Maldonado said: "Don't worry, Averette. I know you and I'm going to file on you." Maldonado then said, "Bye" and hung up the phone. Maldonado also testified that during the telephone conversation when he said: "I know who you are Averette Manemann," the voice

he identified as appellant's said: "Yes, that's right."

Maldonado testified that the appellant's phone call "upset" him and he was a little "shook up." Maldonado testified he recognized appellant's voice as that of the man he had dealt with the day before and a week before, and took the threat "pretty seriously." Maldonado said that although he had not carried his service weapon all of the time, he began carrying it every place he went after appellant threatened him. Maldonado testified that he thought the threats were to kill him or to cause him bodily harm, or that appellant was "going to try and do away with me in some way."

▮ The elements of the offense which the State must prove, are: (1) a person, (2) intentionally, (3) in a manner likely to alarm, (4) communicates by telephone, (5) a threat, (6) to inflict serious bodily injury on, or commit a felony against, (7) another person. When reviewing the sufficiency of the evidence to support a conviction, an appellate court, viewing the evidence in the light most favorable to the prosecution, must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Griffin v. State,* 614 S.W.2d 155 (Tex.Crim.App.1981).

▮ Whether a particular statement may properly be considered to be a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted by those to whom the maker communicates the statement as a serious expression of intent to harm or assault. *United States v. Orozco–Santillan,* 903 F.2d 1262, 1265 (9th Cir.1990); *United States v. Mitchell,* 812 F.2d 1250, 1255–56 (9th Cir.1987). The test is whether a threat would justify apprehension by an ordinary hearer, not whether the threat communicated over the telephone caused a particular recipient to actually become apprehensive. *State v. Weippert,* 237 N.W.2d 1 (N.D.1975). Threats of physical harm need not be directly expressed, but may be contained in veiled statements nonetheless implying injury to the recipient when viewed in all the circumstances. *State v. McGinnis,* 243 N.W.2d 583 (Iowa 1976).

▮ The capability to carry out the threat in this type of offense is not an essential element of the offense. *Jarrell v. State,* 537 S.W.2d 255 (Tex.Crim.App.1976). That a threat is subtle does not make it less of a threat. *United States v. Gilbert,* 884 F.2d 454, 457 (9th Cir.1989). Alleged threats should be considered in light of their entire factual context, including the surrounding events and the reaction of the listeners. *United States v. Orozco–Santillan,* 903 F.2d 1262 (9th Cir.1990); *United States v. Mitchell,* 812 F.2d 1250, 1255 (9th Cir.1987).

In the case of *Holt v. United States,* 547 A.2d 158 (D.C.App.1988), *on rehearing* en banc, 565 A.2d 970 (D.C.App.1989), the defendant attempted to rob a victim as she was leaving her apartment one morning. She resisted and when a neighbor appeared the defendant fled. Early in the evening on the same day, as the victim was getting out of her car in the parking lot, the defendant walked past her and without stopping looked at her and said: "I'm gonna get you, bitch." A jury acquitted the defendant of the attempted robbery and assault offenses arising from the early morning incident, but found him guilty of making a felony threat. The appellate court, en banc, upheld the judgment and sentence of six years' imprisonment.

Another case, in which the facts are similar to those in this case, is *United States v. Orozco–Santillan,* 903 F.2d 1262 (9th Cir. 1990). Immigration and Naturalization Agent Daniel Vela and other officers arrested the defendant and several other persons. The defendant, while kneeling on the ground, admitted he was a deportable alien. Vela asked the defendant to stand. The defendant replied: "Take these handcuffs off and I'll kick your fucking ass." The defendant voiced some other obscenities and repeated that he would "kick [Vela's] ass" if Vela removed his hand cuffs. The defendant made bond and thereafter made three telephone calls to Vela. In one of the telephone calls, partly in English and partly in Spanish, he said "you mother fucker, you will pay for

this." The defendant claimed that what he said in the telephone call was not a threat. The United States Court of Appeals held that the defendant's telephone statements that Vela "would pay, rather than saying he would injure Vela, was no defense." Further, defendant's statement made after Vela had arrested him and subjected him to deportation proceedings were circumstances from which a rational finder of facts could conclude the defendant's telephone statement was a threat.

The meaning of statements can only be interpreted by considering the context in which they are made. For example, if one professional athlete told a member of an opposing team, "We are going to kill you tonight," it would ordinarily be interpreted to mean, "we will defeat your team tonight," not "we are going to commit a criminal offense."

A reviewing court must respect the function and duty of the fact finder to ascertain the credibility of witnesses, to resolve evidentiary conflicts, and to draw reasonable inferences from proven facts, by assuming the fact finder resolved such matters in a manner which supports the judgment. See *Limuel v. State*, 568 S.W.2d 309, 311 (Tex.Crim.App. 1978).

■ Maldonado arrested appellant a week before the phone call was made. On the evening before the phone call was made, appellant while being arrested had words with Maldonado in the presence of other officers. All of the facts and circumstances must be considered by the fact finder. The trial court, as the fact finder, could rationally conclude that a reasonable person would understand the telephone communication to Maldonado as a threat to inflict serious bodily injury or to commit a felony, intentionally made in a manner likely to alarm an ordinary recipient. The evidence is sufficient to support the court's judgment that an unlawful threat proscribed by section 42.07(a)(2) was committed.

We now consider whether the evidence is sufficient to establish the identity of the caller as the appellant. In a post-submission memorandum, appellant calls our attention to the "indicia of reliability test" found in *Williams v. State*, 850 S.W.2d 784 (Tex. App.—Houston [14th Dist.] 1993, pet. granted). In that case, the recipient of a telephone threat identified the caller by voice recognition. That identification, along with other evidence of the circumstances, was held sufficient to establish the caller's identity. Although the facts in the two cases differ slightly, we find nothing in that case which would persuade us toward a different result in this case.

Appellant calls our attention to *Porter v. State*, 50 S.W. 380 (Tex.Crim.App.1899), a prosecution for burglary with intent to commit rape, in which the defendant's identity was proved "solely by his voice, and certain tracks." The deputy sheriff brought the defendant before the victim and she heard defendant speak. The victim said the defendant's voice sounded like the voice of the person who had entered her house the night before. The opinion then states: "But even as to this she was not certain. . . . It occurs to us that the [victim's] testimony is very weak. And, besides this, the [victim] was contradicted as to her recognition of the voice of appellant, by other witnesses." We find the *Porter* case to be distinguishable and hence unpersuasive in our determination of this case.

■ The identity of a telephone caller may be established by self-identification of the caller coupled with additional evidence such as the context and timing of the telephone call, the contents of the statement challenged, internal patterns and other distinctive characteristics, and disclosure of knowledge and facts known peculiarly to the caller. *United States v. Orozco–Santillan*, 903 F.2d at 1266; *United States v. Miller*, 771 F.2d 1219, 1234 (9th Cir.1985); and see Tex.R.Crim.Evid. 901(b)(4)(5)(6). Proof of the identity of a telephone caller is for the fact finder to determine, and testimony of the recipient of a call that he recognized the voice of the caller is competent to establish the identity of the caller, when the recipient at either a prior or subsequent time has been in the caller's presence and heard him speak. *See Gray v. State*, 549 So.2d 1316 (Miss. 1989).

█ Maldonado testified that when he received the call he said: "I know who you are Averette Manemann." The voice Maldonado identified as appellant's replied, "Yes, that's right." This was self-identification. There were the additional circumstances, notably the timing of the call, made soon after appellant had been released from custody. Also, Maldonado had placed appellant under arrest at the hospital only a week before the call. Perhaps the most revealing evidence is the characteristic pattern of obscene language used by the caller which was so similar to that used by appellant against Maldonado at the Special Events Center the previous evening. The trial court's finding that appellant made the threatening telephone call to Maldonado is supported by ample evidence. Appellant's point of error is overruled.

The judgment of the trial court is affirmed.