**Opinion issued July 3, 2014.**



In The

# Court of Appeals

For The

# First District of Texas

————————————————

**NO. 01-13-00146-CR**

————————————————

**RICHARD MENDOZA, JR., Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 400th District Court**
**Fort Bend County, Texas**
**Trial Court Case No. 11-DCR-058694**

**MEMORANDUM OPINION ON REHEARING**

A jury convicted Richard Mendoza of murder, assessed punishment at fifty

years' confinement, and imposed a $10,000 fine. On appeal, Mendoza complains

that (1) the evidence is legally insufficient to support his conviction because it is based on uncorroborated accomplice–witness testimony; (2) the trial court erred in failing to include an accomplice–as–a–matter–of–fact instruction in the jury charge; (3) the evidence is legally insufficient to support the conviction; and (4) the trial court abused its discretion in admitting a recording of a telephone conversation between Mendoza and a detective.

After we issued our opinion and judgment, Mendoza moved for rehearing. We deny Mendoza's motions for rehearing, but order that this court's opinion and judgment of March 13, 2014, be withdrawn and set aside. We issue this opinion and judgment in their stead.[1] We affirm.

## Background

In November 2002, Mendoza drove Christopher Daigle, Joshua Fretz, and Daniel Rodriguez to a field to pick mushrooms. Mendoza was seventeen years old; Fretz and Rodriguez were fourteen and fifteen years old, respectively. Fretz testified that, at the time, Daigle and Mendoza were best friends, but he thought it was possible that Mendoza wanted to fight Daigle in the field due to jealousy over a girlfriend. Upon arrival at the field, Rodriguez walked in front of Fretz, who

---

[1] Mendoza filed a motion for rehearing and a motion for rehearing en banc. Because we issue a new opinion and judgment, we dismiss Mendoza's motion for rehearing en banc as moot. *See Giesberg v. State*, 945 S.W.2d 120, 131 n.3 (Tex. App.—Houston [1st Dist.] 1997), *aff'd*, 984 S.W.2d 245 (Tex. Crim. App. 1998).

walked in front of Mendoza and Daigle.  Mendoza carried a shotgun.  Daigle asked Mendoza why he brought the shotgun.  Mendoza replied that he brought it to hunt squirrels and birds.  Fretz testified that he did not doubt Mendoza's answer.  Rodriguez testified that he did not remember this conversation and did not know at the time why Mendoza had brought the shotgun.  Mendoza suddenly shot Daigle in the back of the head.  Fretz and Rodriguez ran back to Mendoza's truck.  One or two minutes later, Mendoza arrived back at the truck.  Mendoza drove Fretz and Rodriguez away from the field.

Mendoza later told Fretz and Rodriguez to go back to the field to move Daigle's body.  Mendoza asked them to bring a change of clothes.  The three returned to the field at night.  Mendoza brought a flashlight, a trash bag, scissors, and rope.  The three dragged Daigle's body to a brushy part of the field.  Fretz removed Daigle's clothes and put them in the trash bag.  They then drove to a wooded area near Fretz's house, undressed there, and placed their clothes in the same trash bag.  Fretz later burned the clothes.

Fretz testified that Mendoza fabricated a story that Mendoza and Daigle went to a mall together and that, at the mall, Daigle left Mendoza to meet a group of his friends.  Rodriguez also testified that Mendoza fabricated a story that Mendoza, Fretz, and Rodriguez had left Daigle at a mall.

3

Several days after Daigle was reported missing, Detective Stepp called a phone number associated with Mendoza. The speaker self–identified as Mendoza. The speaker stated that he had not seen Daigle since November 7, 2002. He stated that, on that day, he had left Daigle at a mall because his mother had asked him to come home. The speaker also stated that Daigle had decided to remain at the mall with some girls. He stated that he had not seen Daigle since that contact and mentioned that Daigle had spoken about running away because of "his situation at home" with his mother and grandmother. The speaker mentioned that Daigle's father would be released from jail soon and that Daigle wanted to live with his father, rather than his grandmother.

Several weeks later, Mendoza told Tyler Hall, one of his high school friends, that he had shot Daigle. Mendoza drove Hall to a field and told her that he had shot Daigle there. Hall testified that she thought that Mendoza was joking at the time.

In or about January 2009, Daigle's mother recognized Hall at a restaurant and mentioned that she had heard that Mendoza had killed Daigle. Hall responded that she had heard the same rumor. At Daigle's mother's request, Hall contacted some detectives and visited a police station. Hall led the detectives to the field where Mendoza had told her that he had shot Daigle.

4

In July 2011, Fretz led detectives to a field, one street away from the field that Hall had identified. The following month, Rodriguez led the detectives to the same field that Fretz had identified. A detective soon discovered a bone fragment in this field. After conducting a DNA test, a forensic analyst determined that the bone fragment was 11,000 times more likely to be from the son of Daigle's parents than from any other Caucasian person.

*Course of proceedings*

Detective McKinnon filed an affidavit to obtain a warrant. In it, McKinnon avers that Phillip Gardner stated that he observed Daigle in Mendoza's truck with Rodriguez and Fretz on the day Daigle went missing. Gardner's earlier written statement to the police, however, does not mention Fretz.

At trial, Detectives Tippit and McKinnon testified that the offense occurred in Fort Bend County. Detective McKinnon testified that Brittany Parker had told him that Nick Camerillo had told her that Camerillo, not Mendoza, had killed Daigle. Detective Stepp testified that she had received a lead that gang members may have been involved in Daigle's disappearance. Tobias Tzur testified that he saw Daigle after November 7, 2002, the date Mendoza allegedly killed Daigle.

**Discussion**

## I.  Accomplice witnesses

The trial court did not include an accomplice–witness jury instruction with respect to Fretz and Rodriguez and permitted them to testify; on appeal, Mendoza contends that they were accomplice witnesses.

*Standard of Review*

We review a trial court's decision to deny a requested accomplice–witness jury instruction for an abuse of discretion. *Delacerda v. State*, 425 S.W.3d 367, 395 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also Paredes v. State*, 129 S.W.3d 530, 538 (Tex. Crim. App. 2004). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008).

*Analysis*

Mendoza's complaints about uncorroborated accomplice–witness testimony and the failure to include an accomplice–witness instruction hinge upon whether Fretz and Rodriguez are accomplice witnesses. Article 38.14 of the Code of Criminal Procedure provides, "A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it

6

merely shows the commission of the offense." TEX. CODE CRIM. PROC. ANN. art. 38.14 (West 2005). To be considered an accomplice witness, a witness's participation with a defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged. *Druery v. State*, 225 S.W.3d 491, 498 (Tex. Crim. App. 2007) (citing *Paredes*, 129 S.W.3d at 536). A witness is not an accomplice witness merely because he knew of the offense and did not disclose it, or even if he concealed it. *Id.* (citing *Kunkle v. State*, 771 S.W.2d 435, 439 (Tex. Crim. App. 1986)). Neither a witness's presence at the scene of the crime, nor a witness's complicity with a defendant in the commission of another offense apart from the charged offense, renders that witness an accomplice witness. *Id.* (citing *Kunkle*, 771 S.W.2d at 439). If the evidence is conflicting and it remains unclear whether a witness is an accomplice, a trial court should allow the jury to decide whether the witness is an accomplice witness as a matter of fact. *Id.* at 498–99 (citing *Paredes*, 129 S.W.3d at 536). But if the evidence clearly shows that a witness is not an accomplice, a trial court is not obliged to instruct the jury on the accomplice–witness rule—as a matter of law or fact. *Smith v. State*, 332 S.W.3d 425, 440 (Tex. Crim. App. 2011) (citing *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987)).

Mendoza contends that Fretz and Rodriguez are accomplice witnesses because they testified that they aided Mendoza in covering up Daigle's murder by

7

moving Daigle's body and removing and burning Daigle's clothes. Fretz and Rodriguez, however, did not undertake an affirmative act to promote the commission of murder; rather, they helped conceal it. In *Druery*, two witnesses (1) were present before and during the murder; (2) did not warn the victim that the defendant intended to kill the victim; and (3) received forty dollars each after the murder. *Druery*, 225 S.W.3d at 500. One of the witnesses assisted the defendant in disposing of the body and the murder weapon. *Id.* The Texas Court of Criminal Appeals nevertheless rejected a contention that they were accomplice witnesses. *Id.* ("[M]erely assisting after the fact in the disposal of a body does not transform a witness into an accomplice witness in a prosecution for murder."); *see also Paredes*, 129 S.W.3d at 537 ("Although [a witness] assisted after the fact in the disposal of the bodies, he is not an accomplice as a matter of law because he is not susceptible to prosecution for capital murder.").

Mendoza contends that Fretz and Rodriguez are accomplice witnesses because they knew that Mendoza had a shotgun and planned to fight Daigle, but gave no warning to Daigle. Even if Fretz and Rodriguez knew that Mendoza planned to assault Daigle, however, they are not accomplice witnesses to murder or assault, because they committed no affirmative act to assist Mendoza in shooting Daigle or in committing an assault. *See Druery*, 225 S.W.3d at 498 ("A witness is

8

not an accomplice witness merely because he or she knew of the offense and did not disclose it.").

Following the Court of Criminal Appeals' analysis in *Druery*, neither Fretz nor Rodriguez was an accomplice witness; thus, the trial court did not err in concluding that their testimony need not be corroborated. *See id.* at 500. For the same reason, the trial court was within its discretion in failing to include an accomplice–as–a–matter–of–fact instruction in the jury charge, because the evidence presented does not raise a dispute of fact as to whether Fretz and Rodriguez are accomplice witnesses. *See Smith*, 332 S.W.3d at 440.

## II. Sufficiency of the evidence

*Standard of review*

In reviewing the sufficiency of the evidence to support a conviction, we consider all of the record evidence in a light most favorable to the verdict, and determine whether no rational fact–finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We consider the combined and cumulative force of all the evidence, to determine whether the necessary inferences have a reasonable

9

basis in the evidence. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (citing *Hooper v. State*, 214 S.W.3d 9, 16–17 (Tex. Crim. App. 2007)). Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence can be sufficient to establish guilt. *Id.* We presume that the fact–finder resolved any conflicting inferences in favor of the verdict, and we defer to that resolution. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Clayton*, 235 S.W.3d at 778.

*Analysis*

Mendoza complains that the evidence is legally insufficient to support his conviction because (1) the Fort Bend County trial court lacked jurisdiction in the absence of evidence that the offense occurred in Fort Bend County, rather than in Brazoria County; (2) the detective's affidavit to obtain a warrant contains false information; (3) the State failed to indict Mendoza within ninety days of his arrest; (4) the State did not proffer detectives' witness interview reports, did not call a medical examiner to testify as to the cause of Daigle's death, and did not proffer any physical evidence; (5) a detective testified that Brittany Parker told him that Nick Camerillo had told her that Camerillo, not Mendoza, had killed Daigle; (6) a detective testified that she had received a lead that gang members may have been involved in Daigle's disappearance; and (7) Tobias Tzur testified that he saw Daigle after November 7, 2002, the date Mendoza allegedly killed Daigle.

10

Mendoza's first contention is without merit. Detectives Tippit and McKinnon both testified that the offense occurred in Fort Bend County, not Brazoria County, and thus some evidence supports a finding that the offense occurred in that county. Accordingly, we hold that the trial court had jurisdiction.

Second, Mendoza asks that we set aside the conviction because, in his warrant seeking Mendoza's arrest, McKinnon avers that Phillip Gardner stated that that he saw both Rodriguez and Fretz in Mendoza's truck on the day Daigle went missing. Gardner's written statement to police, however, does not mention Fretz. Regardless, both Rodriguez and Fretz testified at trial that Fretz was with Mendoza, Daigle, and Rodriguez on the day in question. Because we presume the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution, we hold that sufficient evidence supports the jury's implicit finding that Fretz was with Daigle, Mendoza, and Rodriguez on the day Daigle went missing. *See Clayton*, 235 S.W.3d at 778.

Third, Mendoza contends that the evidence is legally insufficient because the State failed to indict Mendoza within ninety days of his arrest. If the State is not ready for trial after ninety days of detention, a defendant accused of a felony must be released either on personal bond or by reducing the amount of bail required. TEX. CODE CRIM. PROC. ANN. art. 17.151, § 1(1) (West 2005). This article of the Code of Criminal Procedure, however, does not deal with the admissibility of

11

evidence or the weight to be applied to evidence, nor does it limit the State's right to prosecute the defendant and obtain a conviction. It does not provide a basis for setting aside the conviction based on legally insufficient evidence.

Fourth, Mendoza contends that the evidence is legally insufficient because the State did not proffer Detectives Tippit and Weathers' witness interview reports, did not call a medical examiner to testify as to the cause of Daigle's death, and did not proffer any physical evidence. This argument is unavailing, because the State introduced other types of evidence, including eyewitness testimony and DNA evidence, that are legally sufficient to support the jury's determination that Daigle was dead and that Mendoza shot him in a field.

Fifth, Mendoza observes that Detective McKinnon testified that Brittany Parker had told him that Nick Camerillo admitted to her that he was the one who shot Mendoza. Rodriguez and Fretz, however, testified that it was Mendoza who killed Daigle, and Hall testified that Mendoza confessed to her that he did. Because we presume the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution, we hold that sufficient evidence supports the jury's finding that Mendoza, not Camerillo, killed Daigle. *See Clayton*, 235 S.W.3d at 778.

Sixth, Mendoza also observes that Detective Stepp testified that she had received a lead that gang members may have been involved in Daigle's

12

disappearance. Rodriguez and Fretz, however, testified that it was Mendoza who killed Daigle, and Hall testified that Mendoza confessed to her that he did. Because we presume the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution, we hold that sufficient evidence supports the jury's finding that Mendoza, not gang members, killed Daigle. *See id.*

Finally, Mendoza similarly contends that the evidence is legally insufficient because Tobias Tzur testified that he saw Daigle alive after the date that Mendoza allegedly killed Daigle. In contrast, Rodriguez and Fretz testified that Mendoza killed Daigle on November 7, 2002. Because we presume the jury resolved any conflicting inferences in favor of the verdict and defer to that resolution, we hold that sufficient evidence supports the jury's finding that Mendoza killed Daigle on November 7, 2002. *See id.*

## III.  Admission of evidence

*Standard of Review*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree." *Taylor*, 268 S.W.3d at 579. A trial court does not abuse its discretion if some evidence supports its decision. *Osbourn v. State*, 92 S.W.3d 531, 538 (Tex. Crim. App.

13

2002).  We uphold a trial court's evidentiary ruling if it was correct on any theory of law applicable to the case.  *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

*Analysis*

Mendoza challenges the authenticity of the recorded telephone conversation proffered at trial as his statements to Detective Stepp.  Texas Rule of Evidence 901(b) provides an illustrative, rather than exhaustive, list of examples of authentication.  TEX. R. EVID. 901(b).  A party may authenticate the identity of a telephone caller by the self–identification of the caller coupled with additional evidence, such as the context and timing of the call, the contents of the statement challenged, distinctive vocal characteristics, and disclosure of knowledge and facts known peculiarly to the caller.  *Mosley v. State*, 355 S.W.3d 59, 69 (Tex. App.— Houston [1st Dist.] 2010, pet. ref'd); *Manemann v. State*, 878 S.W.2d 334, 338 (Tex. App.—Austin 1994, pet. ref'd).

After Daigle went missing, Detective Stepp called a phone number associated with Mendoza.  The speaker self–identified as Mendoza.  The speaker stated that he had not seen Daigle since November 7, 2002.  He stated that, on that day, he left Daigle at a mall because his mother had asked him to come home.  The speaker also stated that Daigle decided to stay at the mall with some girls.  He stated that he had not seen Daigle since that contact and mentioned that Daigle had

14

spoken about running away because of "his situation at home" with his mother and grandmother. The speaker mentioned that Daigle's father would be released from jail soon and that Daigle wanted to live with his father, rather than his grandmother.

Fretz testified that Mendoza had fabricated a story that, on November 7, 2002, Mendoza and Daigle went to a mall together and that, at the mall, Daigle left Mendoza to meet a group of his friends. Rodriguez testified that Mendoza fabricated a story that Mendoza, Fretz, and Rodriguez left Daigle at a mall. Given the detail of the speaker's account of the events of November 7, 2002 and the consistency of that account with Mendoza's statements to others about his fabricated story, the speaker's personal knowledge of Daigle's family situation, and the speaker's self–identification as Mendoza, the trial court did not abuse its discretion in admitting the recorded telephone conversation as properly authenticated evidence. *See Mosley*, 355 S.W.3d at 69.

**Conclusion**

We hold that the evidence is legally sufficient to support Mendoza's conviction for murder. Because no evidence suggests that Fretz and Rodriguez were accomplice witnesses, the trial court did not err in failing to include an accomplice–as–a–matter–of–fact jury instruction. Because Mendoza's telephone conversation with Detective Stepp was properly authenticated, the trial court did

15

not abuse its discretion in admitting it.  Accordingly, we affirm the judgment of the trial court.


Jane Bland
Justice

Panel consists of Justices Keyes, Bland, and Brown.

Do not publish.  TEX. R. APP. P. 47.2(b).