Opinion issued January 30, 2025



In The

# Court of Appeals

For The

## First District of Texas

_____

### NO. 01-23-00414-CR
_____

**DARNELL A. LA RUE MCQUEEN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from County Criminal Court at Law No. 7**
**Harris County, Texas**
**Trial Court Case No. 2420261**

---

## MEMORANDUM OPINION

A jury found appellant Darnell A. La Rue McQueen guilty of harassment, and the trial court assessed her punishment at 180 days in county jail, probated for twelve months. In a single point of error, appellant contends that the evidence is legally insufficient to support her conviction of harassment. We affirm.

## Background

Janisa San Agustine, the complainant, lives with her partner, Kendrick Jones, and their two young daughters. Appellant is Jones's mother.

In early 2022, San Agustine and Jones met appellant at a Taco Cabana. This was the first time the two women met. Jones and San Agustine gave appellant her mail and invited her to their daughter's birthday party, and appellant gave Jones a key fob to her car.

On July 4, 2022, San Agustine and Jones took their daughter to Katy Mills Mall to celebrate her birthday. While there, San Agustine received several notifications on her phone from their Ring doorbell camera showing appellant standing outside their house. Jones called appellant while San Agustine took their daughter to the Build-a-Bear workshop in the mall. They later headed home to pick up their daughter's diaper bag before going to The Aquarium.

San Agustine believed that appellant was at their house either to retrieve the key fob or because of an argument the two women had during the previous week. San Agustine testified that she had made a Facebook post, and appellant commented on it that San Agustine was "playing house." San Agustine texted appellant to ask whether she had an issue with her and suggested that she should have texted San Agustine instead of commenting. An argument ensued and appellant responded that

San Agustine "would never understand where she was coming from in regards to her son being a provider."

On the drive home, San Agustine viewed the video clips of appellant outside their house. The clips showed appellant knocking on the front door and then kicking it. San Agustine testified that appellant looked upset. In the last clip, appellant stated, "Little Bitch, you think this is a game? I'll kill you behind my son." San Agustine testified that she knew appellant was referring to her because she was the only female in the house other than a child. San Agustine became upset because she did not know what she had done to offend appellant. She testified that appellant's statement made her feel harassed, annoyed, alarmed, and tormented. She also felt embarrassed because she trusted appellant with her home address, and appellant showed up to her house threatening to kill her. San Agustine stated that appellant walked back to her car, but she did not see her leave the property. After viewing the video clips, San Agustine and Jones called the police.

Jones testified that he does not have much of a relationship with his mother. According to Jones, appellant did not believe that San Agustine was good enough for him and that they were merely "shacking up" and not a couple, presumably because they were not married. Jones testified that the video clips showed appellant pounding on their front door with a closed fist and "donkey-kicking" the door. When Jones called appellant to ask her why she was there, appellant responded that she

3

wanted her key fob back. Appellant also told Jones that she thought someone was in their house. Jones told appellant that no one was at home and that he was at work. Jones testified that he told her this because he did not want appellant to ruin his daughter's birthday. He also did not want to see appellant that day because of the heated phone call he had had with her following her text exchange with San Agustine during which appellant had become aggressive. Jones testified that one of the video clips captured appellant saying, "Little Bitch, I'll kill you over my son. You think this shit is a joke." Based on appellant's statement and the fact that she thought there was a man in their house, Jones believed that appellant thought San Agustine was cheating on him. Jones testified that San Agustine was terrified after hearing appellant's statement because she did not know appellant, and she feared for their daughter's safety. Appellant was gone by the time Jones and San Agustine arrived home. Jones later returned appellant's key fob and told her not to contact him anymore. Appellant told Jones to kill himself and that he was no longer her son.

The jury found appellant guilty of the charged offense. Following a punishment hearing, the trial court sentenced appellant to 180 days in county jail, probated for twelve months, and ordered that she have no contact with San Agustine or engage in threatening, harassing, or assaultive conduct toward Jones. This appeal followed.

**Discussion**

4

In her sole point of error, appellant contends that the evidence is legally insufficient to support her conviction of harassment. The State responds that there was legally sufficient evidence to support appellant's conviction and that it proved every element of the charged offense beyond a reasonable doubt.

## A. Standard of Review

We review appellant's challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19. Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *See id.* at 314, 318 n.11; *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *Mottin v. State*, 634 S.W.3d 761, 765 (Tex. App.—Hous. [1 Dist.] 2020, pet. ref'd).

The jury is the sole judge of the credibility of witnesses and the weight to give their testimony, and our role on appeal is simply to ensure that the evidence

reasonably supports the jury's verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *Galvan-Cerna v. State*, 509 S.W.3d 398, 403 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)). Inconsistencies in the evidence are resolved in favor of the verdict. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). "On appeal, the same standard of review is used for both circumstantial and direct evidence cases." *Hooper*, 214 S.W.3d at 13.

**B.    Applicable Law**

Penal Code Section 42.07 provides that "[a] person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person . . . threatens, in a manner reasonably likely to alarm the person receiving the threat, to inflict bodily injury on the person or to commit a felony against the person, a member of the person's family or household, or the person's property." TEX. PENAL CODE § 42.07(a)(2). With exceptions not relevant here, an offense under this section is a Class B misdemeanor. *See id*. § 42.07(c).

**C.    Analysis**

Appellant contends that the evidence is legally insufficient to support her conviction of harassment because there is no evidence that her remark was a threat and that it was directed at San Agustine.

Whether a particular statement may properly be considered a threat is governed by an objective standard—that is, whether a reasonable person would foresee that the statement would be interpreted as a serious expression of intent to harm or assault by those to whom the maker made the statement. *Manemann v. State*, 878 S.W.2d 334, 337 (Tex. App.—Austin 1994, pet. ref'd); *see also White v. State*, Nos. 02-23-00039-CR, 02-23-00040-CR, 2023 WL 6889985, at *4 (Tex. App.— Fort Worth Oct. 19, 2023, no pet.) (mem. op., not designated for publication). The test is whether a threat would justify apprehension by an ordinary hearer, not whether

the threat communicated caused a particular recipient to actually become apprehensive. *See Manemann*, 878 S.W.2d at 337; *see also White*, 2023 WL 6889985, at *4. The ability to carry out the threat in this type of offense is not an essential element of the offense. *Manemann*, 878 S.W.2d at 337. Nor is it necessary that the party threatened be present when the threat was made. *Whitehead v. State*, 273 S.W.3d 285, 286 n.2 (Tex. Crim. App. 2008); *see also Raybon v. State*, No. 02-12-00071-CR, 2013 WL 4129126, at *4 (Tex. App.—Fort Worth Aug. 15, 2013, pet. ref'd) (mem. op., not designated for publication)). Alleged threats should be considered in light of their entire factual context, including the surrounding events and the reaction of the listeners. *Manemann*, 878 S.W.2d at 337 (citations omitted).

Here, the video clip of appellant's statement was admitted into evidence. San Agustine testified that the clip showed appellant standing outside their front door and stating, "Little Bitch, you think this is a game? I'll kill you behind my son." Jones testified that the doorbell video captured appellant saying, "Little Bitch, I'll kill you over my son. You think this shit is a joke." San Agustine and Jones stated that appellant pounded on their front door and donkey-kicked it, and that appellant appeared upset. The jury also heard testimony that San Agustine and appellant had an argument over text following one of San Agustine's Facebook posts several weeks before the incident. Jones testified that he and appellant later had a heated phone call about the text exchange and that appellant became aggressive. San

8

Agustine testified that she felt harassed, annoyed, alarmed, and tormented by appellant's statement. Jones testified that San Agustine was terrified after hearing appellant's statement because she did not know appellant and feared for her daughter's safety. The evidence was legally sufficient to support the jury's finding that appellant's statement was a threat. *See* TEX. PENAL CODE § 42.07(a)(2); *Jackson*, 443 U.S. at 318–19.[1]

Appellant also argues that there was no evidence showing that her statement was directed at anyone, much less San Agustine. In support of her argument, appellant cites *Wright v. State*, No. 12-07-00045-CR, 12-07-00046-CR, 12-07-00047-CR, 2008 WL 5006175, at \*3 (Tex. App.—Tyler Nov. 26, 2008, no pet.) (mem. op., not designated for publication).[2]

In *Wright*, the three complainants (a mother, father, and son) began receiving letters and notes from the defendant, after two of his horses died, that they perceived

---

[1] Appellant asserts that she did not know she was making a remark that could be considered a threat because she was not aware that she was being recorded. That appellant was unaware of being recorded has no bearing on whether a reasonable person would construe appellant's statements as a threat.

[2] We note that while counsel may cite unpublished opinions, appellate courts may not treat them as binding or persuasive opinion. *See* TEX. R. APP. P. 47.7(a); *Ferguson v. State*, 335 S.W.3d 676, 688 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (Frost J., concurring) ("[U]npublished cases are not part of Texas jurisprudence and cannot be either binding or persuasive authority."). Because *Wright* is an unpublished opinion, it has no precedential value.

as threats. *See id.* at *1. The defendant was charged with three counts of harassment, and the jury found him guilty as charged. *See id.*

On appeal, the defendant argued, in part, that there was no evidence that he had ever communicated with the son by letter. *See id.* at *2. The court of appeals agreed, concluding that the State's argument that it proved the son received the threat was unsupported by the record. *See id.* at *3. It noted that the son did not testify he received cards and letters from the defendant, and the father's testimony that "[w]e received several [letters]" and "that's when we started receiving the cards and letters," with no context behind the use of "we," was insufficient to prove that the son had received the letter alleged to be a threat against him. *See id.*

Appellant's reliance on *Wright* is unavailing. Here, the video clip admitted into evidence showed that appellant made the threatening statement at the front door of Jones and San Agustine's house. Jones testified that appellant did not believe that San Agustine was good enough for him and that she was cheating on him. San Agustine testified that she knew appellant had directed the threatening statement toward her because she was the only female who lived in the home other than a child. Appellant also used the word "bitch" during the incident. Appellant argues that the word "bitch" is used colloquially to refer to males, and the evidence showed that she thought she heard a male voice in the house. Thus, she reasons, it is equally possible that her comment was directed to the person she believed was in the house. As the

10

sole judge of a witness's credibility and the weight to be given such testimony, the jury was entitled to believe San Agustine's and Jones's testimony. *See Montgomery*, 369 S.W.3d at 192; *Galvan-Cerna*, 509 S.W.3d at 403. Based on this record, the jury could have reasonably inferred that appellant directed her threatening statement at San Agustine.

Viewing the evidence in the light most favorable to the jury's verdict and considering the combined and cumulative force of all the admitted evidence and reasonable inferences drawn, we conclude that a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *See Nisbett*, 552 S.W.3d at 262. The evidence is sufficient to support appellant's conviction for the offense of harassment. We overrule appellant's point of error.

## Conclusion

We affirm the trial court's judgment.

Kristin M. Guiney
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).

11