

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-25-00029-CR

———————————————————

RYAN SUZAK, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. F22-4324-462

Before Kerr, Birdwell, and Bassel, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

Appellant Ryan Suzak appeals his conviction for retaliation by threat. *See* Tex. Penal Code Ann. § 36.06(a)(1)(B). On appeal, Suzak contends that (1) the evidence is insufficient to support his conviction and (2) the trial court abused its discretion by admitting certain out-of-court statements pursuant to the forfeiture by wrongdoing doctrine. We will affirm.

## I. BACKGROUND

Shortly before midnight on October 9, 2022, as Jonathan Ramirez was driving away from his girlfriend's trailer home, he noticed a man—later identified as Suzak—and a woman yelling at each other while walking in the opposite direction of his vehicle. Because of the way that Suzak was cursing at the woman, Ramirez felt that the situation "just didn't feel right," so he turned his truck around. After doing so, Ramirez could see that the woman had started walking faster, and when she noticed him, she cried for help and told him to call 911. She then started to run and yelled to Ramirez that Suzak had an axe.

To give the woman time to flee, Ramirez positioned his truck between her and Suzak. Now distracted by Ramirez, Suzak threw his axe at Ramirez's truck. Suzak then retrieved the axe and ran towards the woman, but Ramirez followed in his truck, leading Suzak to hit Ramirez's truck with the axe two or three more times while cursing at him. Eventually, Suzak ran away, and Ramirez called 911.

Law enforcement officers responding to the 911 call were able to locate Suzak based upon the information Ramirez had provided regarding Suzak's physical description and the direction in which he had fled. Officers found Suzak walking along a sidewalk and directed him to stop, but he ignored their commands and kept walking. After approximately five to ten minutes, officers apprehended him.

Several officers stayed with Suzak while others separately spoke with Ramirez and the victim. Officers learned that the victim was Suzak's girlfriend and that they had a tumultuous relationship. According to the victim, she and Suzak had been walking back from a friend's house where Suzak had had his axe sharpened. She said that they had gotten into a verbal altercation that had escalated to the point that Suzak had kicked her dog, chest bumped her, and hit her in the head with the handle of his axe while attempting to knock off her hat. The victim provided a written statement describing the events, allowed officers to take pictures of her injuries, and requested an emergency protective order.

After being detained in handcuffs, Suzak calmed down and was generally cooperative while officers conducted their investigation. But once he was placed under arrest, he became aggressive and began cursing and shouting insults. After officers advised him that he was being arrested for assault family violence and criminal mischief, Suzak called the victim a liar, cursed, and yelled hateful racial comments and slurs. Suzak continued to yell and curse while being transported to and booked into jail. While his comments were directed at many individuals, he made

two specific threats to the victim: a threat to beat her to a bloody pulp and a threat to hit her when he got out of jail.

Suzak was charged with, inter alia, retaliation by threat.[1] He pleaded not guilty, and a jury trial was held. The jury found Suzak guilty, and after he pleaded "true" to the indictment's enhancement paragraph based on a prior felony conviction for aggravated robbery and stipulated to certain other prior offenses, the jury assessed his punishment at twelve years in prison and a $5,000 fine. The trial court sentenced him accordingly. This appeal followed.[2]

## II. DISCUSSION

Suzak raises two points on appeal. We address each of these points in turn below.

### A. Sufficiency of the Evidence

In his first point, Suzak contends that the evidence is insufficient to support his retaliation-by-threat conviction.[3] We disagree.

---

[1]Suzak was also charged under a separate cause number with evading arrest. *See* Tex. Penal Code Ann. § 38.04(a). The jury convicted Suzak of the evading-arrest offense, but he does not challenge that conviction as part of this appeal.

[2]Although Suzak missed his initial deadline to file a notice of appeal, the Texas Court of Criminal Appeals granted him leave to file an out-of-time appeal. *See Ex parte Suzak*, No. WR-96,058-01, 2024 WL 4903276, at *1 (Tex. Crim. App. Nov. 27, 2024) (not designated for publication).

[3]In his second point, Suzak challenges the admissibility of the victim's out-of-court statements regarding the underlying offense that led to Suzak's arrest. But in a sufficiency review, we must consider all evidence admitted at trial—whether properly

4

### 1. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

The factfinder alone judges the evidence's weight and credibility. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021). We may not re-evaluate the evidence's weight and credibility and substitute our judgment for the factfinder's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the factfinder resolved any conflicting inferences

---

or improperly—because the jury was permitted to consider it in reaching its verdict. *Moff v. State*, 131 S.W.3d 485, 488–89 (Tex. Crim. App. 2004). Therefore, we need not address Suzak's second point before conducting our sufficiency review.

in favor of the verdict, and we must defer to that resolution. *Braughton*, 569 S.W.3d at 608.

To determine whether the State has met its burden to prove a defendant's guilt beyond a reasonable doubt, we compare the crime's elements as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Hammack v. State*, 622 S.W.3d 910, 914 (Tex. Crim. App. 2021); *see also Febus v. State*, 542 S.W.3d 568, 572 (Tex. Crim. App. 2018) ("The essential elements of an offense are determined by state law."). Such a charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried. *Hammack*, 622 S.W.3d at 914. The law as authorized by the indictment means the statutory elements of the offense as modified by the charging instrument's allegations. *Curlee v. State*, 620 S.W.3d 767, 778 (Tex. Crim. App. 2021); *see Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

**2. Applicable Law**

Here, to convict Suzak of retaliation by threat as alleged in the indictment, the jury was required to find beyond a reasonable doubt that (1) Suzak (2) intentionally or knowingly threatened to assault the victim (3) in retaliation for or on account of her

6

status (4) as a person who had reported the occurrence of a crime. *See* Tex. Penal Code Ann. § 36.06(a)(1)(B); *Pace v. State*, Nos. 02-14-00282-CR–02-14-00284-CR, 2015 WL 3855588, at *4 (Tex. App.—Fort Worth June 18, 2015, no pet.) (mem. op., not designated for publication).

Whether a particular statement may properly be considered a threat is governed by an objective standard—whether a reasonable person would foresee that the statement would be interpreted as a serious expression of intent to harm or assault by those to whom the maker made the statement. *Manemann v. State*, 878 S.W.2d 334, 337 (Tex. App.—Austin 1994, pet. ref'd). The test is whether a threat would justify apprehension by an ordinary hearer, not whether it caused a particular recipient to actually become apprehensive. *See id.* Indeed, the threatened party need not even have been present when the threat was made. *Whitehead v. State*, 273 S.W.3d 285, 286 n.2 (Tex. Crim. App. 2008); *Raybon v. State*, No. 02-12-00071-CR, 2013 WL 4129126, at *4 (Tex. App.—Fort Worth Aug. 15, 2013, pet. ref'd) (per curiam) (mem. op., not designated for publication). Threats of physical harm need not be direct but may be implied through veiled statements insinuating injury. *Manemann*, 878 S.W.2d at 337. The ability to carry out the threat is not an essential element of the offense. *Id.* Neither is the intent to do so. *White v. State*, Nos. 02-23-00039-CR, 02-23-00040-CR, 2023 WL 6889985, at *4 (Tex. App.—Fort Worth Oct. 19, 2023, no pet.) (mem. op., not designated for publication) (citing *Graves v. State*, Nos. 03-17-00493-CR, 03-17-

00494-CR, 2018 WL 4140663, at *2 (Tex. App.—Austin Aug. 30, 2018, no pet.) (mem. op., not designated for publication)).

### 3. Analysis

Viewed in the light most favorable to the verdict, the record contains sufficient evidence to allow a rational factfinder to find beyond a reasonable doubt that Suzak intentionally or knowingly threatened to assault the victim in retaliation for her reporting of a crime. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

The State presented evidence—including officer testimony and body-camera footage—showing that Suzak, who had calmed down after being detained and was generally cooperating with the police, suddenly became upset when he learned that he was being arrested and demanded to know why he was being taken into custody. While waiting for officers to explain the reason for his arrest, he exclaimed "That's some bulls**t right there. F**k you, [victim's name], you lying a** b*tch." After learning that he was being arrested for assault family violence, Suzak became incensed. When one of the arresting officers asked Suzak why his attitude had changed, he said it was "[b]ecause I'm going to jail for something I didn't f**king do. I did not touch that woman." Then, after ranting and cursing at the officers, Suzak stated,

> This is bulls**t. How the f**k are you taking me to jail for assault. I never touched the b*tch. Oh, I'm going to f**king f**k this ho up when I get out. Yup. That's f**king assault right there. . . . I'll beat that b*tch to a f**king bloody pulp. F**king whore. Lying a** b*tch.

8

Later, while being booked into jail, Suzak continued his tirade, exclaiming,

> You [officers] don't give a f\*\*k about that crack headed b\*tch smoking meth all in her f\*\*king house and everything else. She got kids. You don't give a f\*\*k about that. F\*\*k you d\*ck suckers. You motherf\*\*kers ain't worried about none of that s\*\*t. I ain't even f\*\*king do anything. I-I-I will hit the b\*tch when I get the f\*\*k out of here though, and I'll have a reason to go to jail.

The timing and context of Suzak's statements constitutes circumstantial evidence that he intentionally or knowingly threatened to assault the victim in retaliation for her reporting of a crime. *See Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004) (noting that "[c]ircumstantial evidence alone is sufficient to establish guilt"); *Raybon*, 2013 WL 4129126, at *3 ("A defendant's intent to retaliate may be inferred from circumstantial evidence, such as the defendant's acts, words, or conduct." (first citing *Lozano v. State*, 359 S.W.3d 790, 814 (Tex. App.—Fort Worth 2012, pet. ref'd; and then citing *Helleson v. State*, 5 S.W.3d 393, 395 (Tex. App.—Fort Worth 1999 pet. ref'd))). As noted, Suzak became increasingly upset after learning the reason for his arrest, and shortly after referencing the victim by name and calling her a "lying a\*\* b\*tch," he threatened to "f\*\*k this ho up" and "beat that bitch to a . . . bloody pulp." Both the context and the sequence of these statements support an inference that Suzak was intentionally or knowingly threatening to assault the victim in retaliation for her reporting the assault-family-violence offense for which Suzak was being arrested. *See Meyer v. State*, 366 S.W.3d 728, 731 (Tex. App.—Texarkana 2012, no pet.) ("Comments can be evaluated as threats based, not just on the language used,

9

but also the context within which they are uttered . . . ." (citing *Manemann*, 878 S.W.2d at 338)). Similarly, Suzak's comments immediately before and after his statement that he would "hit the b\*tch" when he got out of jail support an inference that it was intended as a threat to the victim for reporting the assault-family-violence offense for which Suzak was arrested. Right before making this statement, Suzak protested his innocence, and immediately afterward, he noted that he would "have a reason to go to jail" after he followed through on his expressed intention to "hit the b\*tch." The sequence of these statements supports an inference that Suzak was angry at the victim for reporting the offense and that he was threatening to assault her in retaliation for doing so. *See id.*

Suzak argues that retaliatory intent cannot be inferred from his comments because they "were a small part of a monologue of madness" during which he spewed verbal abuse at numerous people, including the arresting officers. But the fact that Suzak directed hateful words towards other individuals does not negate his specific threats to the victim. Even if his other abusive language supported an inference that his comments towards the victim lacked retaliatory intent, the jury—as factfinder—was entitled to choose between reasonable inferences, and we must defer to that choice. *See Raybon*, 2013 WL 4129126, at \*5.

In sum, viewing the evidence—as we must—in the light most favorable to the verdict, we conclude that its combined and cumulative force and the reasonable inferences that could be drawn therefrom allowed the jury to rationally conclude

10

beyond a reasonable doubt that Suzak intentionally or knowingly threatened to assault the victim in retaliation for her reporting of a crime. Accordingly, we overrule Suzak's first point.

## B. Forfeiture by Wrongdoing

In his second point, Suzak contends that the trial court abused its discretion by admitting the victim's out-of-court statements regarding the underlying assault-family-violence offense for which Suzak was arrested because the doctrine of forfeiture by wrongdoing is inapplicable. We disagree.[4]

### 1. Applicable Law and Standard of Review

In a criminal prosecution, a defendant has a Sixth Amendment right to confront adverse witnesses. *Giles v. California*, 554 U.S. 353, 357–58, 128 S. Ct. 2678, 2682 (2008) (citing *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004)). And hearsay—defined as an out-of-court oral or written statement offered in evidence

---

[4]The State argues that Suzak failed to preserve his second point, but because we overrule it on the merits, we need not address whether it was properly preserved. *See Brumit v. State*, 206 S.W.3d 639, 644–45 (Tex. Crim. App. 2006) (expressly declining to decide whether an objection was required to preserve error on an issue because it could be overruled on the merits); *Dawson v. State*, No. 14-95-01091-CR, 1998 WL 119675, at *1 n.4 (Tex. App.—Houston [14th Dist.] Mar. 19, 1998, pet. ref'd) (not designated for publication) ("Because we overrule this point of error on the merits, we do not address whether error was preserved."); *see also Redmond v. State*, 629 S.W.3d 534, 542 n.11 (Tex. App.—Fort Worth 2021, pet. ref'd) (noting that while "'a court of appeals may not *reverse* a judgment of conviction without first addressing any issue of error preservation[,]'" it "may still affirm the judgment on another basis" (quoting *Meadoux v. State*, 325 S.W.3d 189, 193 n.5 (Tex. Crim. App. 2010))).

to prove the truth of the matter asserted in the statement—is inadmissible unless a statute or rule provides otherwise. Tex. R. Evid. 802; *see* Tex. R. Evid. 801(a), (d).

The United States Supreme Court has recognized, however, that certain exceptions exist that allow testimonial hearsay statements to be admitted even though the defendant has not had the opportunity to confront the declarant. *Giles*, 554 U.S. at 358, 128 S. Ct. at 2682. One such exception—referred to as the doctrine of forfeiture by wrongdoing—applies to declarations made by a declarant whose unavailability at trial was wrongfully procured by the defendant. *Id.* at 359, 128 S. Ct. at 2683. This doctrine is based on the principle that "any tampering with a witness should once [and] for all estop the tamperer from making any objection based on the results of his own chicanery." *Gonzalez v. State*, 195 S.W.3d 114, 117 (Tex. Crim. App. 2006). Without such a rule, there would be "an intolerable incentive for defendants to bribe, intimidate, or even kill witnesses against them." *Giles*, 554 U.S. at 365, 128 S. Ct. at 2686. "[T]he domestic-violence context is particularly suitable for the application of the forfeiture by wrongdoing doctrine[.]" *Powell v. State*, No. 02-19-00206-CR, 2021 WL 5370163, at *72 (Tex. App.—Fort Worth Nov. 18, 2021, pet. ref'd) (mem. op. on reh'g, not designated for publication) (citing *Giles*, 554 U.S. at 377, 128 S. Ct. at 2693).

Article 38.49 of the Texas Code of Criminal Procedure is a codification of the forfeiture by wrongdoing doctrine. *See* Tex. Code Crim. Proc. Ann. art. 38.49. This statute provides that a defendant who "wrongfully procures the unavailability of a

12

witness . . . may not benefit from the wrongdoing by depriving the trier of fact of relevant evidence . . . [and] forfeits the party's right to object to the admissibility of evidence or statements based on the unavailability of the witness." *Id.* Article 38.49 requires the trial court to determine, outside the presence of the jury, "whether forfeiture by wrongdoing occurred by a preponderance of the evidence." *Id.* In determining whether the forfeiture by wrongdoing doctrine applies, the trial court may consider all "[e]vidence and statements related to a party that has engaged or acquiesced in wrongdoing that was intended to, and did, procure the unavailability of a witness." *Id.*

The party offering evidence of wrongdoing is not required to show that "the actor's sole intent was to wrongfully cause the witness's or prospective witness's unavailability" or that "the actions of the actor constituted a criminal offense." *Id.* But to establish that a witness is truly unavailable, the party offering the evidence must show that it has "made a good-faith effort to obtain the witness's presence at trial." *Sanchez v. State*, No. 13-22-00512-CR, 2024 WL 377855, at *2 (Tex. App.—Corpus Christi–Edinburg Feb. 1, 2024, pet. ref'd) (mem. op., not designated for publication) (quoting *Reed v. State*, 312 S.W.3d 682, 685 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd)). Direct or circumstantial evidence may be used to show that the defendant's wrongful conduct caused a witness's unavailability. *See Brown v. State*, 618 S.W.3d 352, 357 (Tex. Crim. App. 2021) ("[C]ourts have recognized that procurement or causation need not be proven directly, but may be established by inference."); 23 C.J.S. *Criminal*

13

*Procedure and Rights of Accused* § 1182 (May 2025 Update) ("Circumstantial evidence may be used to establish, in whole or in part, that the witness's unavailability was procured by the defendant.").

Generally, we review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). Under this standard, the trial court's ruling will be upheld as long as it falls within the "zone of reasonable disagreement" and is correct under any theory of law applicable to the case. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001).

Because the forfeiture by wrongdoing doctrine relates to the admission of otherwise objectionable evidence, we utilize the abuse-of-discretion standard in reviewing a trial court's admission of evidence under this doctrine. *Dobbins v. State*, No. 07-20-00095-CR, 2021 WL 2521564, at *3 (Tex. App.—Amarillo June 18, 2021, no pet.) (mem. op., not designated for publication); *Schindler v. State*, No. 02-17-00241-CR, 2018 WL 4924946, at *5 (Tex. App.—Fort Worth Oct. 11, 2018, pet. ref'd) (mem. op., not designated for publication). When applying the abuse-of-discretion standard, we view the evidence in the light most favorable to the trial court's ruling. *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009). Thus, if the record contains some evidence to support the trial court's decision to admit evidence, there is no abuse of discretion, and we must defer to that decision. *Osbourn*, 92 S.W.3d at 538. When evaluating the evidence of wrongdoing, we draw all reasonable inferences in favor of the trial court's findings. *Byrd v. State*, No. 07-20-00234-CR, 2022 WL

14

2719060, at *6 (Tex. App.—Amarillo July 13, 2022, pet. ref'd) (mem. op., not designated for publication).

## 2. Analysis

Here, the record contains sufficient evidence to support the trial court's decision to admit the victim's out-of-court statements under the forfeiture by wrongdoing doctrine.

At the Article 38.49 hearing, the State offered investigators' testimony and portions of five recorded jail calls that Suzak made to his mother and her significant other to support its contention that Suzak had wrongfully procured the victim's unavailability at trial. The State's evidence showed that:

- When investigators contacted the victim in June 2023 to serve her with a trial subpoena, she told them that people acting on Suzak's behalf had been calling her, leaving her voicemails, coming by her residence, and making threats towards her and her family—including threats to burn down her home—to try to convince her to drop the charges. She expressed that she was "concerned" and "very scared."

- When serving the subpoena, one investigator had spoken with the victim's mother, who stated that she was "very fearful of her daughter testifying because they had received threats regarding [Suzak's] case."

- In September 2023, the victim had spoken on the phone with an investigator to provide updated contact information. During this conversation, she conveyed that Suzak had been calling her from jail to convince her to drop the charges and that she had contacted the jail to get them to stop the phone calls.

- During the recorded jail calls, Suzak repeatedly asked his mother to get in touch with the victim; his mother stated that she had attempted to contact

15

the victim multiple times without success; and Suzak expressed that he did not believe that the victim would show up for trial.

- Despite having successfully served the victim with the trial subpoena and having spoken with her on the phone after the initial trial setting was rescheduled, investigators were unable to locate her and serve her with another subpoena for the new trial date. Investigators called the victim and her mother numerous times and visited the victim's last known address (which was in a trailer park), but when they arrived, her trailer home had been removed and the lot was being scraped and relandscaped.

Viewed in the light most favorable to the trial court's ruling, *see Ocon*, 284 S.W.3d at 884, this evidence supports an inference that Suzak procured the victim's unavailability at trial by repeatedly calling her himself from jail, having his mother call her, and directing others to threaten her and her family to stop her from testifying, *see Byrd*, 2022 WL 2719060, at *6. Accordingly, we cannot conclude that the trial court abused its discretion by admitting the victim's out-of-court statements under the forfeiture by wrongdoing doctrine. *See Osbourn*, 92 S.W.3d at 538; *see also McGee v. State*, No. 05-17-01445-CR, 2019 WL 2004059, at *7 (Tex. App.—Dallas May 7, 2019, no pet.) (mem. op., not designated for publication) (clarifying that the forfeiture by wrongdoing doctrine does not require "[a] direct threat or demand from the defendant to the witness to avoid service or not appear in court"); *cf. Dominguez v. State*, No. 05-20-00968-CR, 2022 WL 3024330, at *5 (Tex. App.—Dallas July 29, 2022, no pet.) (mem. op., not designated for publication) (holding that trial court did not abuse its discretion by concluding that the State showed by a preponderance of the evidence that defendant wrongfully procured witness's unavailability at trial where

defendant contacted witness "dozens of times in knowing violation of a protective order," told her that their stories needed to "coincide," urged her to execute an affidavit of non-prosecution, told her to "[g]et the hell out of Dodge," and explained to her "that as long as she did not appear, the State 'ain't got s[***]'").

We overrule Suzak's second point.

### III.  CONCLUSION

Having overruled both of Suzak's points, we affirm the trial court's judgment.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  September 11, 2025